# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: May 13, 2021

Mr. Garry Richard Adams Jr.
Ms. Abigail Victoria Lewis
Adams Landenwich & Walton
517 W. Ormsby Avenue
Louisville, KY 40203

Mr. Byron N. Miller
Mr. Joseph Andrew Wright
Thompson, Miller & Simpson
734 W. Main Street
Suite 400
Louisville, KY 40202

Re: Case No. 20-5367, *Amity Koch v. Thames Healthcare Group*
Originating Case No. : 1:18-cv-00039

Dear Counsel,

The Court issued the enclosed opinion today in this case.

Sincerely yours,

s/Cathryn Lovely
Opinions Deputy

cc: Ms. Vanessa L. Armstrong

Enclosure

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0241n.06cca

No. 20-5367

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| AMITY KOCH, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| | ) | |
| THAMES HEALTHCARE GROUP, LLC, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

> **FILED**
> May 13, 2021
> DEBORAH S. HUNT, Clerk

BEFORE:   **BATCHELDER, CLAY, and BUSH, Circuit Judges.**

**ALICE M. BATCHELDER**, **Circuit Judge.**   Plaintiff-Appellant Amity Koch was a nursing-home nurse employed by the Defendant-Appellee Thames Healthcare Group, LLC. Koch, who has Attention Deficit Hyperactivity Disorder (ADHD) and Major Depressive Disorder (MDD), was terminated by Thames after she violated its no-call/no-show attendance policy. Koch sued Thames for disability discrimination and retaliation under the Kentucky Civil Rights Act (KCRA) and interference and retaliation under the Family and Medical Leave Act (FMLA). The district court granted Thames summary judgment. We **AFFIRM**.

I.

Thames employed Koch at its Greenwood Nursing and Rehabilitation Center in Bowling Green, Kentucky. Greenwood has a robust attendance policy under which it accommodates chronically absent or tardy employees by providing counseling and warnings before termination. But, if an employee is to miss a scheduled shift for any reason, she must notify her supervisor or

No. 20-5367, *Koch v. Thames Healthcare Group, LLC*

the nurse-in-charge at least two hours before her shift starts. If she fails to do so, she is deemed a no-call/no-show. And after two no-call/no-shows, the employee is automatically terminated.

Greenwood first hired Koch on April 5, 2016. From the start, Koch was chronically absent and was eventually placed on a 30-day probation period. Her absenteeism persisted through January 2017, at which point she took a voluntary three-month leave of absence. In April 2017, Thames rehired Koch under another 30-day probationary period. Within her first month back, Thames suspended Koch for two days for leaving work without permission. Koch's poor attendance habits continued, causing Greenwood's Assistant Director of Nursing, Nicole Jessie, to counsel and warn Koch about her absences and advise Koch about Greenwood's attendance policy.

Then came the week of August 14, 2017. On that Monday, Koch was scheduled to begin work at 7:00 a.m. but did not show. Koch text messaged Greenwood's Director of Nursing, Amanda Steffey, at 7:24 a.m., stating that she had a doctor's appointment for her wrist injury at 8:30 a.m. and that she would arrive to work "[r]ight after it's done," but she never did.

Koch missed her Tuesday, August 15 shift too. Her phone records show that she placed a one-minute call to Steffey at 6:52 a.m., eight minutes before her shift started. Steffey denies hearing from Koch but conceded that her poor cellular service might have prevented Koch's call from going through. Koch claims that she told Steffey that she "wouldn't be coming in the rest of th[e] week[,]" but did not explain further. That day, Steffey filled out a disciplinary notice, noting that Koch should be fired for two no-call/no-shows. To give Koch a chance to explain her absence, Steffey did not send the form to human resources that day. Koch does not claim that she contacted Steffey later that day to explain her absence.

No. 20-5367, *Koch v. Thames Healthcare Group, LLC*

Koch also missed her shift on Wednesday, August 16. She claims that she sent Steffey a text message at 6:27 p.m., stating: "I've been afraid to leave my house this week. My NP put me on a $1000/mo. med and ran out of samples, it hit me hard Sunday."[1]. But Steffey denied receiving the text.

On Thursday, August 17, Koch again missed work. This time, Steffey submitted a written disciplinary notice to the human resources department for processing. The notice recounted Koch's absences on August 14–16 and again suggested Koch's termination.

On Friday, August 18, Koch left a letter on Steffey's desk. The letter was from Koch's medical care provider, Nurse Practitioner Cindy Lemon, stating:

> I have been seeing Amity for ADHD and Major Depressive disorder and providing medication management/individual psychotherapy. During the time we have been waiting on insurance to pay for her medication, we were also out of samples and were unable to provide her with her medication. We are now able to provide the medication and ask that you please excuse Amity Koch from work for dates August 14, 2017 to August 18, 2017.

Koch claims that she attempted to contact Steffey and Jessie about returning to work but Steffey and Jessie denied receiving those messages. Greenwood officially terminated Koch on August 20.

Koch subsequently sued Thames, alleging interference and retaliation under the FMLA and disability-discrimination and retaliation under the KCRA.[2] After discovery, both Koch and Thames filed motions in limine, and Thames moved the court for summary judgment on Koch's FMLA and KCRA claims. The district court granted Thames' summary judgment motion and denied both parties' motions in limine as moot. *Koch v. Thames Healthcare Grp.*, No. 1:18-CV-00039, 2020 U.S. Dist. LEXIS 56372 (W.D. Ky. Mar. 31, 2020). The district court concluded that

---

[1] Koch asserts that she sent that text message on August 15, but her phone records show a text message sent to Steffey on August 16, not August 15.

[2] Koch also filed a claim with the Equal Employment Opportunity Commission. The EEOC dismissed Koch's claim but reserved her right to sue.

No. 20-5367, *Koch v. Thames Healthcare Group, LLC*

neither the FMLA nor the KCRA entitled Koch to relief. It held that Koch was not entitled to FMLA leave and even if she was, she did not provide proper notice. *Id.* at *34–36. It also held that Koch was not disabled as defined by the KCRA because her medication mitigated the effects of her ADHD and MDD. *Id.* at *25. The district court also dismissed Koch's retaliation claims.

Koch timely appeals.

## II.

We review a district court's grant of summary judgment de novo. *Bryson v. Regis Corp.*, 498 F.3d 561, 569 (6th Cir. 2007). "Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* "Our task is to determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* (internal quotation marks omitted).

### A. FMLA Interference

Under the FMLA, it is "unlawful for employers to interfere with or deny an employee's exercise of her FMLA rights." *Bryson*, 498 F.3d at 570 (citing 29 U.S.C. §§ 2614, 2615). To state a claim of FMLA interference, the employee must show that: (1) she was an eligible employee; (2) her employer was a covered employer; (3) she was entitled to leave under the FMLA; (4) she gave her employer notice of her intention to take leave; and (5) her employer denied or interfered with the FMLA benefits to which she was entitled. *See Wallace v. FedEx Corp.*, 764 F.3d 571, 585 (6th Cir. 2014).

-4-

No. 20-5367, *Koch v. Thames Healthcare Group, LLC*

Here, the parties dispute the entitlement and notice elements. Assuming that Koch was entitled to FMLA leave—though we have doubts that she was—Koch did not properly notify Thames that she intended to take FMLA leave during the week of August 14, 2017.

"The critical test for substantively-sufficient notice is whether the information that the employee conveyed to the employer was reasonably adequate to apprise the employer of the employee's request to take leave for a serious health condition that rendered him unable to perform his job." *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 421 (6th Cir. 2004). "While an employee need not expressly assert rights under the FMLA or even mention the FMLA, the employee must give the employer enough information for the employer to reasonably conclude that an event described [by the] FMLA [] has occurred." *Walton v. Ford Motor Co.*, 424 F.3d 481, 486 (6th Cir. 2005) (citations and quotations omitted).

There are different standards for foreseeable and unforeseeable leave. Koch's FMLA-interference claim fails under both.

### i. *Foreseeable Leave*

Under the FMLA, a plaintiff must give 30 days' notice for foreseeable leave, but if "30 days['] notice is not practicable, such as because of a lack of knowledge of approximately when leave will be required to begin, a change in circumstances, or a medical emergency, notice must be given as soon as practicable." 29 C.F.R. § 825.302(a) (2013). "As soon as practicable means as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case." 29 C.F.R. § 825.302(b).

Koch's absence was undoubtedly foreseeable. Koch testified that she ran out of medication and was incapacitated on Sunday, August 13. Because nothing in the record indicates that Koch knew of her impending absence thirty days in advance, we assess whether it was practical for Koch

No. 20-5367, *Koch v. Thames Healthcare Group, LLC*

to notify Thames of absences on Monday, August 14. We find that it was. Koch could have notified Steffey on Monday morning when she texted Steffey about her 8:30 a.m. wrist-injury appointment.

Koch argues that she provided sufficient notice during her one-minute phone call with Steffey on the morning of August 15 and again on the evening of August 16 when she texted Steffey that she was "afraid to leave [her] house [that] week" and that she "ran out of samples, and it hit [her] hard Sunday." Even assuming, as we must, that Steffey received that phone call and text message, those contacts were insufficient to notify Thames of Koch's FMLA leave and too late to avoid automatic termination under the attendance policy.

Koch's August 15 phone call merely conveyed that she would not be coming for the rest of the week without further explanation. The August 16 text message merely stated that Koch was out of medication, not that it affected her ADHD or MDD, or that she was requesting leave for the next day. Why was she afraid to leave her house, and *what* hit her hard? Without more, her text message could not reasonably put Thames on notice that Koch was suffering from a serious health condition or that she was requesting FMLA leave because of it. *See Beaver v. RGIS Inventory Specialists, Inc.*, 144 F. App'x 452, 456–57 (6th Cir. 2005) (finding that the plaintiff's general description of her ailment and absence did not provide sufficient FMLA-leave notice).

More importantly, both Koch's phone call and text message were tardy. Koch's August 15 phone call did not come until eight minutes before her shift started, long after the attendance policy's two-hour-notice deadline. The same goes for the letter from Koch's medical care provider, which did not come until August 17. Before that time, Koch had two no-call/no-shows and was subject to automatic termination under Thames' attendance policy.

No. 20-5367, *Koch v. Thames Healthcare Group, LLC*

### ii. *Unforeseeable Leave*

When the need for leave is "not foreseeable, an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). Notice "shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." 29 C.F.R. § 825.303(b).

The unforeseeable-leave standard permits a plaintiff to cure a notice default by showing that she could not give notice before the absence or leave. But the record refutes Koch's claim that her major depressive episode and fear to leave her house justified her failure to abide by the FMLA's notice requirement. Over the course of that week, Koch sent and received 702 text messages and placed and received over ten phone calls to a variety of third parties. *See Acker v. Gen. Motors, LLC*, 853 F.3d 784, 789–90 (5th Cir. 2017) (rejecting claim of unusual circumstances when the employee could not explain why "'unusual circumstances' left him capable of calling one line, but not the other").

The district court properly concluded that Thames did not interfere with Koch's FMLA rights.

### B. KCRA Discrimination Claim

"The language of the KCRA mirrors that of the ADA; consequently, claims brought under the KCRA are interpreted consistently with the standards developed under the ADA." *Bryson*, 498 F.3d at 574 (citation omitted); *see Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003) ("The Kentucky Civil Rights Act was modeled after federal law, and our courts have interpreted the Kentucky Act consistently therewith."). Because Kentucky passed the KCRA before the ADA Amendments Act (ADAAA), this court continues to apply pre-ADAAA jurisprudence to KCRA analysis. *See Krueger v. Home Depot USA, Inc.*, 674 F. App'x 490, 494

Case 1:18-cv-00039-GNS-HBB Document 47 Filed 05/13/21 Page 9 of 12 PageID #: 578
Case: 20-5367 Document: 37-2 Filed: 05/13/2021 Page: 8 (9 of 12)

No. 20-5367, *Koch v. Thames Healthcare Group, LLC*

(6th Cir. 2017) ("[T]he Kentucky legislature adopted the language in the KCRA in 1992 and intended it to reflect the language of the ADA at that time, not the subsequent amendments."); *Breen v. Infiltrator Sys.*, 417 F. App'x 483, 486 (6th Cir. 2011) ("[T]h[e] amendment has yet to be incorporated into the Kentucky statute, *see* K.R.S. § 344.010(4) (1992), so the pre-2008 ADA standards apply to [Plaintiff]'s claim.").

"Under [Kentucky Revised Statutes] § 344.040(1), it is unlawful for an employer to discharge any individual . . . because the person is a qualified person with a disability." *Hallahan v. Courier-Journal*, 138 S.W.3d 699, 706 (Ky. Ct. App. 2004) (internal quotation marks omitted). When, like here, a plaintiff bases his or her disability-discrimination claim on circumstantial evidence, Kentucky courts require that the plaintiff show that:

> (1) he is disabled; (2) he is "otherwise qualified" for the position with or without reasonable accommodation; (3) he suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled plaintiff was replaced. The employer must then offer a legitimate explanation for its action. If the employer satisfies this burden of production, the plaintiff must introduce evidence showing that the proffered explanation is pretextual.

*Id.* at 706 n.5.

Koch's claim falters on the disability prong. Under the KCRA, the term "disability" is defined to include: (a) a physical or mental impairment that substantially limits one or more of the major life activities of the individual; (b) a record of such impairment; or (c) being regarded as having such an impairment. *See* K.R.S. 344.010(4). Koch does not have a disability under any scenario.

### i. Substantial Limitation.

Under pre-ADAAA law, Kentucky courts consider three factors in determining whether an individual is substantially limited: "[1] the nature and severity of the impairment; [2] the duration or expected duration of the impairment; and [3] the permanent or long-term impact, or the expected

No. 20-5367, *Koch v. Thames Healthcare Group, LLC*

permanent or long-term impact of or resulting from the impairment." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 196 (2002), *superseded by statute* Pub. L. No. 110-325, 122 Stat. 3553 (2009). "Merely having an impairment does not make one disabled for purposes of the ADA [and KCRA]." *Id.* at 195. "Under Kentucky law temporary impairments do not qualify as disabilities" either. *Larison v. Home of the Innocents*, 551 S.W.3d 36, 43 (Ky. Ct. App. 2018). Therefore, "a person whose . . . mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected it does not substantially limi[t] a major life activity." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999), *superseded by statute* Pub. L. No. 110-325, 122 Stat. 3553 (2009) (alteration in original) (internal quotation marks omitted).

Koch has provided sufficient evidence that she suffers a mental impairment, but her impairment does not substantially limit her ability to work. Her period of incapacity lasts only as long as she lacks medication. Koch was fully capable of working when she was medicated. At worst, Koch's substantial limitation was temporary, which, in this instance, lasted only four days— and only because she was without medicine. *See Mahon v. Crowell*, 295 F.3d 585, 590–91 (6th Cir. 2002) (An "impairment that only moderately or intermittently prevents an individual from performing major life activities is not a substantial limitation" under the ADA). Koch's ADHD and MDD does not substantially limit her work activities.

### ii. Record of Disability.

"A record of an impairment means an individual has 'a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.'" *MX Grp., Inc. v. City of Covington*, 293 F.3d 326, 339 (6th Cir. 2002) (citation omitted). Koch's record-of-disability challenge fails because she does not cite to any history or

No. 20-5367, *Koch v. Thames Healthcare Group, LLC*

classification demonstrating that her impairment substantially limits one or more major life activities. *Id.*

### iii. Regarded as Disabled.

Although the record reveals that Steffey and other Thames employees knew that Koch had ADHD—through Koch's jokes or hearsay statements—it does not reflect that Koch or Thames's staff classified or regarded Koch as disabled. The record refutes any claim that (1) Thames thought that Koch's ADHD or MDD prevented her from performing a broad class of jobs and (2) Thames modified Koch's duties to accommodate a perceived disability. *See Schave*, 127 S.W.3d at 594 ("To succeed upon a regarded as disabled claim, plaintiff must demonstrate that an employer thought he was disabled . . . [and] that the employer thought that his disability would prevent him from performing a broad class of jobs." (alteration in original) (internal quotation marks omitted)).

There is no genuine issue of fact as to whether Koch had a disability as defined by K.R.S. § 344.010(4).

### C. FMLA and KCRA Retaliation Claims

Koch's corresponding retaliation claims also fail. To survive summary judgment on retaliation under the FMLA and KCRA, a plaintiff must demonstrate that: (1) she engaged in a protected activity, (2) her employer knew of that activity, (3) the employer thereafter took an adverse employment action, and (4) a causal connection exists between the protected activity and the adverse action. *See Seegar v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283 (6th Cir. 2012) (FMLA); *Charalambakis v. Asbury Univ.*, 488 S.W.3d 568, 583 (Ky. 2016) (KCRA).

As discussed above, Koch's FMLA retaliation claim fails because when Thames terminated Koch, it had neither notice nor any reason to believe that Koch was exercising her FMLA rights. *See Land v. S. States Coop., Inc.*, 740 F. App'x 845, 850 (6th Cir. 2018) (affirming

No. 20-5367, *Koch v. Thames Healthcare Group, LLC*

summary judgment for the defendant because the defendant had already started termination proceeding before receiving the plaintiff's FMLA letter).

Koch's KCRA retaliation claim fails because she merely rehashes her FMLA argument, which the KCRA does not protect. The KCRA requires that the claimed discrimination be "because the person is a qualified individual with a disability," not because the person is "incapacitated" as defined by the FMLA. *Compare* K.R.S. § 344.040(1)(a), *with* 29 C.F.R. § 825.115(a); *see Stanley v. Haier US Appliance Sols., Inc.*, No. 3:19-CV-00640, 2020 U.S. Dist. LEXIS 24448, at *4 (W.D. Ky. Feb. 11, 2020) ("Taking FMLA leave is not a protected activity for the purposes of the KCRA anti-retaliation provision.").

### III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

-11-